UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
IN RE INNER CITY PRESS :
: **DECISION AND ORDER**
: 26-CV-4094 (WFK)
---------------------------------------------------------------X

**WILLIAM F. KUNTZ, II, United States District Judge:**
Before this Court is Matthew Russell Lee's ("Lee") request on behalf of Inner City Press (or "Interested Party") to unseal the criminal case 18-CR-277 pursuant to common law and the First Amendment of the U.S. Constitution. *See* Ex. A (the "Unsealing Request"), ECF No. 1.[1] The Government and the defendant in the sealed criminal case ("Defendant") oppose the request. *See* Gov't Opp'n to Unsealing Request, ECF No. 5; Def.'s Opp'n to Unsealing Request, ECF No. 6. For the reasons discussed below, the Unsealing Request is **DENIED**.

## FACTUAL AND PROCEDURAL BACKGROUND

On July 7, 2026, Lee emailed a memorandum to this Court requesting the Court unseal the docket sheet and records in 18-CR-277. *See* Unsealing Request. Lee explained the Unsealing Request was made on behalf of Inner City Press in response to the status conference held the same day in 18-CR-277, stating "the . . . matter . . . appeared on [the] public EDNY courtroom calendar . . . listed only as '*SEALED*,' with no case title, party names, or other identifying information." Unsealing Request at 2.

Inner City Press "asks that the sealing" of 18-CR-277 "be tested against the required standards, . . . with the minimum necessary restriction." *Id.* at 3. Specifically, Inner City Press asks the Court to:

> (1) direct the Clerk to docket [its] letter in [18-CR-277];
> (2) unseal the docket sheet, with any genuinely necessary redactions of particular entries, consistent with [*Hartford Courant Co. v. Pellegrino*, 380 F.3d 83 (2d Cir. 2004)];
> (3) unseal the judicial records in the case or, in the alternative, direct the government (and any defendant) to show cause, with particularized findings under [*Lugosch v. Pyramid Co. of*

[1] Citations are to the docket in *In Re: Inner City Press*, 26-CV-4094. Page pincites refer to the ECF page numbers assigned to a filing where available, and where no ECF headings are present, to the page numbers listed in the original filing.

> *Onondaga*, 435 F.3d 110 (2d Cir. 2006)], why continued sealing – in whole rather than in part – remains justified; and
> (4) permit Inner City Press to be heard, by letter or at a conference, before any renewed sealing determination.

*Id.*

In response, this Court docketed the Unsealing Request in 18-CR-277 and opened a new civil case captioned *In Re: Inner City Press*, 26-CV-4094. The Court issued a briefing schedule directing party responses to the Unsealing Request. *See* ECF No. 2.

On August 11, 2026, the Government and Defendant filed letters in opposition to the Unsealing Request. *See* Gov't Opp'n to Unsealing Request; Def.'s Opp'n to Unsealing Request at 1 ("For the reasons the government has articulated, we oppose Inner City Press' request to unseal the docket sheet and judicial records in the 18-CR-277 matter, and urge that the motion of Inner City Press be denied."). The same day, the Government also docketed a supplemental letter in 18-CR-277 to accompany its opposition filed in 26-CV-4094.

Following receipt of the publicly filed oppositions, Lee emailed this Court the reply on behalf of Inner City Press the same day, which was docketed in 26-CV-4094. *See generally* Interested Party's Reply, ECF No. 7.

On August 12, 2026, the Court scheduled oral argument on the Unsealing Request for August 24, 2026. *See* ECF No. 8. On August 24, 2026, the Court held the oral argument, during which the Court informed the parties they would be afforded the opportunity to submit supplemental briefing. ECF No. 11. On August 28, 2026, Inner City Press filed supplemental briefing in support of the Unsealing Request which included two additional requests for relief:

> (1) [R]equire the government to file a particularized statement identifying, document by document, what specific content within the four asserted categories requires continued protection and why, consistent with *Lugosch* and [*United States v. Greenwood*, 145 F.4th 248 (2d Cir. 2025)]; and

> (2) [C]onsider, whether in this case or through the administrative process the Court has described, a mechanism for public visibility into the existence and periodic review of sealed dockets generally, consistent with the practice of other federal courts.

Interested Party's Suppl. Briefing (the "Supplement" or "Suppl.") at 3, ECF No. 13 (italics added).

**DISCUSSION**

**I. Legal Standard**

**A. The Experience and Logic Test of *Press-Enterprise II* and its Origins**

The First Amendment of the U.S. Constitution states:

> Congress shall make no law respecting an establishment of religion, or prohibiting the free excise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances.

U.S. Const. amend. I. The First Amendment defines the inability of both federal and state governments to make laws abridging the freedoms of speech, press, and assembly. *See Richmond Newspapers, Inc. v. Virginia.*, 448 U.S. 555, 575–78 (1980) (The First Amendment applies "in conjunction with the Fourteenth [Amendment]" to state governments.).

In *Richmond Newspapers*, the U.S. Supreme Court "firmly established for the first time that the press and general public have a constitutional right of access to criminal trials." *Globe Newspaper Co. v. Superior Court for Norfolk Cty.*, 457 U.S. 596, 603 (1982); *see also Press-Enterprise Co. v. Superior Court of California* (*Press-Enterprise I*), 464 U.S. 501, 513 (1984) (applying the right of access to *voir dire* proceedings). "[I]n the context of trials . . . the First Amendment guarantees of speech and press, standing alone, prohibit government from summarily closing courtroom doors which had long been open to the public at the time that Amendment was adopted." *Richmond Newspapers*, 448 U.S. at 576. "[E]qually fundamental" is

"[t]he right of peaceable assembly" which—coupled with the freedoms of speech and press—ensures people can "assemble in public places not only to speak or to take action, but also to listen, observe, and learn; indeed, they may '[assemble] for any lawful purpose[.]'" *Id.* at 578 (citing *De Jonge v. Oregon*, 299 U.S. 353, 364 (1937); then citing *Hague v. CIO*, 307 U.S. 496, 519 (1939) (opinion of Stone, J.)).

The Supreme Court later referred to this doctrine as the "First Amendment right of public access[,]" *Press-Enterprise Co. v. Superior Court* (*Press-Enterprise II*), 478 U.S. 1, 9 (1986), and extended its reach to certain pre and post-trial hearings, *see* 1 Seth D. Berlin et al., *Newsgathering and the Law* § 4.01 (6th ed. 2026) (describing applications of the doctrine to various bail, detention, suppression, competency, plea, sentencing, and post-trial motion hearings). To that end, lower courts are instructed to apply the *Press-Enterprise II* standard, which established "tests of **experience** and **logic**" to determine when "a qualified First Amendment right of public access attaches[]" to a proceeding. *Press-Enterprise II*, 478 U.S. at 9 (emphasis added)

First, the "experience prong" requires courts to examine "whether the place and process ha[s] historically been open to the press and general public[]" which must be examined by courts because "a tradition of accessibility implies the favorable judgment of experiences[.]" *Id.* at 8 (citing *Globe Newspaper Co.*, 457 U.S. at 605) (internal quotation marks omitted).

Second, the "logic prong" requires courts to consider "whether public access plays a significant positive role in the functioning of the particular process in question." *Id.* The "value of openness lies in the fact that people not actually attending trials can have confidence that standards of fairness are being observed; the sure knowledge that *anyone* is free to attend gives assurance that established procedures are being followed and that deviations will become

known." *Id.* at 13 (emphasis in original) (citing *Press-Enterprise I*, 464 U.S. at 508) (internal quotation marks omitted).

This two-step standard applies equally to both "judicial proceedings and to access certain judicial documents[,]" such as a case docket and its filings. *Hartford Courant Co.*, 380 F.3d at 91, 93; *see also* 28 James Wm. Moore et al., *Moore's Federal Practice* § 655.03 (3d ed. 1997) ("As a general rule, case dockets are 'public records' that must be open to the public. Similarly, there is a strong presumption that the *contents* of motions and other filings are also to be available for public inspection, a right grounded in both common-law traditions and the First Amendment right of public access." (emphasis in original)).

However, this right of public access is qualified, not absolute. *Press Enterprise II*, 478 U.S. at 9 (citing *Globe Newspaper, Co.*, 457 U.S. at 606). For example, "there are some limited circumstances in which the right of the accused to a fair trial might be undermined by publicity." *Id.* Today, "proceedings cannot be closed unless specific, on the record findings are made demonstrating that 'closure is essential to preserve higher values and is narrowly tailored to serve that interest.'" *Id.* at 13–14 (citing *Press-Enterprise I*, 464 U.S. at 510). "The interest is to be articulated along with findings specific enough that a reviewing court can determine whether the closure order was properly entered." *Id.* at 9–10 (citing *Press-Enterprise I*, 464 U.S. at 510).

**B. Application of the Right of Public Access in the Second Circuit**

The U.S. Court of Appeals for the Second Circuit applied the *Press-Enterprise II* standard in *Lugosch*, finding the district court infringed upon the First Amendment right of public access by "not only . . . failing to make the specific, on-the-record findings required in order to justify its denial but also in failing to act expeditiously[]" on the issue. 435 F.3d at 126.

Starting with an assessment of the common law right, the Circuit stated district courts must (1) "conclude that the documents at issue are indeed 'judicial documents'" meaning "the item[s] filed must be relevant to the performance of the judicial function and useful in the judicial process[,]" *id.* at 119 (citing *United States v. Amodeo* (*Amodeo I*), 44 F.3d 141, 145 (2d Cir. 1995)); (2) "determine the weight of [the common law] presumption[]" attaching to the judicial documents which "must be governed by the role of the material at issue in the exercise of Article III judicial power and the resultant value of such information to those monitoring the federal courts[,]" *id.* (citing *United States v. Amodeo* (*Amodeo II*), 71 F.3d 1044, 1049 (2d Cir. 1995)); and (3) "'balance competing considerations against [the weight of the presumption][]" which "include but are not limited to 'the danger of impairing law enforcement or judicial efficiency' and 'the privacy interests of those resisting disclosure[,]'" *id.* at 120 (citing *Amodeo II*, 71 F.3d at 1050).

Under the First Amendment—the more rigorous standard compared to common law—the Second Circuit applied both the "experience and logic" prongs of *Press-Enterprise II* and the "necessary corollary" approach of *Hartford Courant Co.* to further find the right of public access attached to the summary judgment documents at issue. *See id.* at 124. Pursuant to *Press-Enterprise II*, the Circuit observed courts "generally invoked the common law right of access to judicial documents in support of finding a history of openness." *Id.* at 120 (citing *Hartford Courant Co.*, 380 F.3d at 92). Citing *Hartford Courant Co.*, the Circuit stated courts also "consider[] the extent to which the judicial documents are 'derived from or [are] a necessary corollary of the capacity to attend the relevant proceedings." *Id.* at 120 (citing 380 F.3d at 92–93). Specifically, "the constitutional right of access . . . appl[ies] to written documents submitted in connection with judicial proceedings that themselves implicate the right of access." *Id.* at 124

(citing *In re New York Times Co.*, 828 F.2d 110, 114 (2d Cir. 1987)). Considering both approaches explained in *Lugosch*, the Second Circuit found "oral arguments relating to a motion for summary judgment fall into the category of civil proceedings to which there is a First Amendment presumption of access," therefore, the same presumption "exist[ed] . . . [for] documents submitted to the court in connection with a summary judgment motion." *Id.*

Furthermore, *Lugosch* reiterated "sealing of . . . documents may be justified only with specific, on-the-record findings that sealing is necessary to preserve higher values and only if the sealing order is narrowly tailored to achieve that aim." *Id.* (citing *In re New York Times Co.*, 828 F.2d at 116; *see supra* at 5 (citing *Press-Enterprise II*, 478 U.S. at 13–14). "Broad and general findings by the trial court . . . are not sufficient to justify closure." *Lugosch*, 455 F.3d at 120. Indeed, the case was vacated and remanded by the Second Circuit to the district court for the purpose of making specific, on-the-record findings consistent with the decision. *See id.* at 126–27.

**II. Analysis**

This Court previously resolved the first and fourth requests brought by Inner City Press in the Unsealing Request. *See supra* at 2 (docketing the Unsealing Request in both 18-CR-277 and 26-CV-4094, ordering briefing, and scheduling the instant oral argument). As to the other requests for relief in both the Unsealing Request and Supplement, this Court finds the reasons for 18-CR-277 remaining under seal—as previously determined by the Court on the record—are consistent with both Supreme Court and Second Circuit precedent.

### A. The Court Made Specific, On-the-Record Findings to Justify Continued Sealing

Similar to the media intervenors in *Lugosch*, Inner City Press asks this Court to consider both common law and the First Amendment's "well-established presumption . . . favoring public access to judicial proceedings and records, including criminal dockets." Unsealing Request at 2 (citing *Press-Enterprise II*, 478 U.S. at 1; then citing *Amodeo II*, 71 F.3d at 1044). Inner City Press acknowledges "[this] presumption extends to the docket sheet itself[]" per the Second Circuit's decision in *Hartford*. *Id.* (citing 380 F.3d at 93, 96) (observing docket sheets "'provide a kind of index to judicial proceedings and documents' and endow the public's access rights with meaning; without them, the public cannot know what it is being denied or seek review of sealing decisions.").

The Court does not deny the right of public access includes judicial documents, such as docket reports. However, the Government has provided sufficient information to support the Court's determination 18-CR-277 should remain under seal in its entirety. Pursuant to common law, the Court finds competing considerations outweigh the common law presumption of access which attaches to judicial documents. *See Lugosch*, 435 F.3d at 119–20. The Court has reviewed the filings in 18-CR-277 alongside Second Circuit precedent establishing what considerations are applicable, appropriate, and override the public's access rights. *See* Gov't Opp'n to Unsealing Request at 1 ("[T]here are various particular and justifiable reasons—well-established under the law of this Circuit—that provide for continued sealing of records." (collecting cases)). As the Government noted at oral argument, these competing considerations include the existence of personally identifiable information, medical information, third-party information, and law enforcement sensitive information. Court Real Time Tr. ("Tr.") at 7:2–9. Such considerations are present in this case.

Pursuant to the First Amendment, the Court also finds both the experience and logic test of *Press-Enterprise II* and the necessary corollary approach of *Hartford Courant Co.* have been satisfied. As mentioned, the right of public access is not absolute. *See supra* at 5. The Court finds its sealing orders are proper because the First Amendment right of public access has indeed been countermanded by the competing considerations mentioned above, under both Supreme Court and Second Circuit standards. The Court's sealing orders are necessary to preserve these higher values, and the Court finds no narrower order would serve these interests.

Additionally, the Court confirms the Government's contention specific, on-the-record findings as to the continued sealing of 18-CR-277 were made during the July 7th conference and in satisfaction of the *Hartford Courant Co.* standard. *See* Gov't Opp'n to Unsealing Request at 2 ("[T]he continued sealing of the matter has been supported by on-the-record findings[] . . . [a]t the conference" on July 7, 2026, "despite the movant's claims to the contrary[.]").

**B. The Age of the Sealed Case is Irrelevant**

Inner City Press also argues the age of the sealed case does not warrant the "[c]ontinued total sealing of an entire criminal docket[,] . . . [which] is the broadest possible form of restriction[.]" *Id.* at 2. Inner City Press observes "[18-CR-277] was opened in 2018 – approximately eight years ago." *Id.* Citing *Lugosch*, Inner City Press argues "[w]hatever justification may have supported wholesale sealing at inception" in 2018, "the Second Circuit requires that sealing be supported by specific, on-the-record findings, be narrowly tailored, and be no broader than necessary to serve the interest asserted." *Id.* (citing 435 F.3d at 119–20). Inner City Press further states the status conference held by this Court in 18-CR-277 "suggests . . . ongoing proceedings" and argues "the passage of time ordinarily erodes rather than strengthens

the interests (such as protecting an ongoing investigation) that support sealing at a case's outset." *Id.*

But Inner City Press's focus on the age of the sealed case is misplaced. *Lugosch* says nothing about whether the length of time since the inception of a case is a justification for upholding the public's right of access. In fact, such a standard would result in arbitrary line-drawing by courts, requiring them to decide what "too old" or "too young" means. While the age of the case may provide context in the sealing analysis, it is not a sufficient factor on its own to justify unsealing. Instead, the important duty of the Court—which Inner City Press does identify correctly—is making the specific, on-the-record findings as to why the case should remain sealed—regardless of age. This requirement was satisfied.

**C. The Court Announced the Sealed Proceeding on its Public Calendar**

Both parties address how the July 7th conference in 18-CR-277 was on the Court's public calendar. The Government states "[t]he conference was listed in advance on the [EDNY]'s public calendar and was open to members of the public." Gov't Opp'n to Unsealing Request at 2.

Inner City Press argues this is insufficient, stating "[the Government's] argument is circular[.]" Interested Party's Reply at 1. Inner City Press argues "the appearance of this matter on the Court's public calendar itself discloses the case's existence, undercutting any rationale for concealing that bare fact on the docket." Unsealing Request at 2. In reply to the Government's purportedly circular argument, Inner City Press clarifies "[t]he [G]overnment cannot point to attendance at a hearing about a secret case as evidence the secrecy was cured, when the secrecy is precisely what would have prevented anyone from learning the hearing was worth attending." Interested Party's Reply at 1.

Essentially, Inner City Press believes the sealed criminal case's presence on this Court's public calendar is not enough for the right of public access to be satisfied and actually cuts against arguments for its continued sealing. Indeed, Inner City Press seems to take issue with the Governments assertion that no member of the public appeared at the July 7th conference in the underlying case; Inner City Press argues, "no member of the public could have known there was a hearing worth appearing at, because the docket the hearing concerned was, and remains, invisible." *Id.* Thus, Inner City Press asserts "[w]hatever occurred at the July 7[th] conference cannot retroactively cure eight years of exactly the harm *Hartford Courant* [*Co.*] identifies: a public that has had no way, this entire time, to know this docket exists." *Id.* (italics added) (citing 380 F.3d at 93).

Inner City Press's argument is unpersuasive. The courtroom during the July 7th conference was in fact open to the public. As mentioned during the August 24th oral argument in this action, "no one tells this [Court] when to close the doors." Tr. at 15:10–11. Only "[i]n very narrow instances[,] the Attorney General of the United States can make [an] application to the Court and in very narrow instances the courtroom can be sealed." *Id.* at 15:13–16. But "[i]t's very rare" and there "shouldn't be any implication that [this Court] close[s] the doors to the members of the public or press[;] that is not appropriate absent this very, very narrow exception [in] a handful of cases." *Id.* at 15:17–25, 16:1.

The Court also finds unpersuasive Inner City Press's argument it could not know from the public calendar whether or not the sealed case was interesting enough to attend. The Court does "not suggest that [Inner City Press] should or should not cover each and every one of [this Court's] cases[,] but [the Court] ha[s] an obligation to cover each and every one of [its] cases[,]" which it "do[es] consistent with Second Circuit and Supreme Court authority[.]" *Id.* at 14:10–

15. Indeed, it would be another arbitrary and subjective practice for this Court to engage in an analysis of which proceedings or cases are interesting enough to attend, and to determine how that impacts whether a case should be sealed or not; nor is that the test set out by either the Second Circuit or Supreme Court. As stated to the parties, "every case . . . is important to this Court, to the Court staff, and to the litigants[,] whether it is civil or criminal . . . [this Court] take[s] them all seriously[.]" *Id.* at 16:22–25.

Separately, Inner City Press states "[it] has found it significantly more difficult in EDNY" to be "granted in-house status . . . and therefore [be] able to have laptop and cell phone [sic]" inside the courthouse. Interested Party's Reply at 2. However, these specific administrative concerns are beyond this Court's purview. Thus, the Court limits its decision to the legal precedent governing the right of public access to courthouse proceedings and judicial documents, not whether electronics may be allowed within its courtrooms.

**CONCLUSION**

Notwithstanding the Court's decision in this matter, it commends Inner City Press for advocating for the public's right to access as emblematic of Lee's experience with the Catholic Worker Movement. Pope Francis once acknowledged such significant work before the U.S. House of Representatives:

> In these times when social concerns are so important, I cannot fail to mention the servant of God, Dorothy Day, who founded the Catholic Worker Movement. Her social activism, her passion for justice and for the cause of the oppressed, were inspired by the Gospel, her faith, and the example of the saints.

161 Cong. Rec. H6193, H6194 (daily ed. Sept. 24, 2015) (statement of Pope Francis).

This Court believes the concept of open courtrooms is what makes the United States a true democratic republic synonymous with "justice" and "charity," the underpinnings of Dorothy

Day's work. A core reason why federal judges do not serve as puppets for kings are the protections found in Article III of the U.S. Constitution and various restrictions against secret proceedings. Enforcing the right of access for legal proceedings to occur in open court is vital, ensuring the public can see what judges are doing day in and day out.

Yet every case has its own story. The issue at the center of this action does not concern a private "Star Chamber" where everyone has denied what they said, and no one knows what is going on. Thus, 18-CR-277 will remain under seal pursuant to both Supreme Court and Second Circuit authority requiring specific, on-the-record findings justifying its closure.

For these reasons, the Unsealing Request is DENIED insofar as it requests the Court unseal 18-CR-277. The Clerk of Court is respectfully directed to close the above-captioned action.

**SO ORDERED.**

**s/WFK**

HON. WILLIAM F. KUNTZ, II
UNITED STATES DISTRICT JUDGE

Dated: September 3, 2026
Brooklyn, New York